Cite as 2023 Ark. App. 238

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-22-654

| | | |
|---|---|---|
| DEBERT MORGAN | | Opinion Delivered April 26, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CR-18-367] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE CHRIS E WILLIAMS, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

This is an appeal from the Hot Spring County Circuit Court's denial of appellant Debert Morgan's (Morgan's) request for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1. Morgan alleges that his trial counsel was ineffective because he failed to properly investigate his "star witness" and ask questions at trial that Morgan contends would have resulted in a not-guilty verdict on the charge of aggravated residential burglary. The circuit court denied Morgan's postconviction relief, and he filed a timely appeal. We affirm.

I. *Background Facts*

Morgan was charged on December 26, 2018, with aggravated assault, aggravated residential burglary, and first-degree battery; he pled not guilty on January 8, 2019. At the August 29 jury trial, Officer Jack Seely of the Malvern Police Department testified that he

was working on Christmas Eve and Christmas Day in 2018 when he was called to investigate a possible stabbing at Eddie Watkins's house.

Sylvia Starline (Starline) testified at trial that Morgan is her husband but that she had been living with Lamont Cross, Sr. (Cross). Starline alleged that both she and Cross went to Eddie Watkins's (Watkins's) house on the night of the incident, and at some point, she looked up and saw Morgan standing at the door of the residence. Morgan told her to come outside, but she refused. Starline testified that Morgan then burst through the door and grabbed her by her hair, put a knife to her throat, and threatened to cut off her head. She stated that other people in the room were able to get Morgan off of her, and she was able to escape. Starline further stated that she ran to the back of the house and hid in the closet. However, Starline looked out of the closet and saw Morgan swinging a knife at Cross, eventually stabbing him.

Watkins also testified that he is the owner of the house where the incident occurred. He said that he was cooking for friends on the night in question, and Starline and Cross were sitting and talking in the living room. Watkins alleged that he walked into the living room and saw Morgan and Cross "tussling." He stated that he had not invited Morgan into his house but that Morgan opened the door and was "already" in the living room asking Starline what she was doing there. Watkins testified that Morgan grabbed Starline by her hair and that Cross tried to stop Morgan. Watkins never saw a weapon, and it was not until after the incident that he heard Cross had been stabbed.

Cross also took the stand at Morgan's trial, acknowledged that he is serving time for a parole violation, and testified that Morgan "burst up in there, grabbed Sylvia by the hair and started punching her and pulling her out the door." Cross said that Morgan jumped over the table and pulled out a knife and began stabbing him. He testified that Morgan stabbed him in his back, and he "got staples and eleven stiches" as a result of his injuries.

The jury found Morgan guilty of aggravated residential burglary and first-degree battery; however, he was found not guilty of aggravated assault. Furthermore, the jury was apprised that Morgan is a habitual offender—with seven prior felony convictions—and recommended consecutive sentences of twenty-five years for the aggravated residential burglary and ten years and a $5,000 fine for first-degree battery. The circuit court accepted the recommended sentences, and Morgan was sentenced to an aggregate term of thirty-five years' imprisonment and a $5,000 fine. This court affirmed Morgan's convictions on direct appeal. *See Morgan v. State*, 2021 Ark. App. 344, 632 S.W.3d 759.

On December 14, 2021, Morgan filed a petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure. Morgan alleged that his trial counsel was ineffective for failing to investigate and properly question his "star witness," thereby resulting in a harsher sentence and prejudice to appellant. Specifically, Morgan contends that if his trial counsel would have asked the witness whether he was on medication at the time or being pressured by the State to testify—due to his parole status—then the jury would not have found him guilty of aggravated residential burglary. Morgan did not identify the name of the witness he was referencing in his postconviction petition.

3

The circuit court held a hearing on the motion on May 10, 2022, and Morgan appeared pro se. At the hearing, Morgan identified Watkins as the witness he was referencing in the petition and alleged that since trial, Watkins had recanted his testimony that Morgan entered his residence uninvited. However, even though Morgan subpoenaed Watkins—who was in the custody of the Arkansas Division of Correction—Watkins notified the corrections officer that he was not attending the hearing. Consequently, Morgan attempted to introduce three affidavits of Watkins wherein Watkins attested that Morgan was an invited guest in his home. However, the circuit court held that the affidavits were inadmissible hearsay, and they were proffered as exhibits instead.

Morgan called seven character witnesses, his trial counsel, and himself to the stand. The only testimony elicited that was relevant to Morgan's ineffective-assistance-of-counsel claim came from his trial counsel, Phil Wilson. Wilson testified that (1) he spoke to Watkins prior to trial; (2) there was no question that Morgan "went in Eddie's house," and several witnesses verified this, including Watkins; (3) he asked Watkins several questions regarding when Morgan entered the residence and what happened thereafter; (4) he asked everything he considered relevant; (5) Watkins testified that he did not invite Morgan into his home the night of the incident; and (6) he cross-examined Watkins about his criminal history. Furthermore, Wilson testified that Watkins's testimony at trial was consistent with what Watkins told him prior to trial. Morgan took the stand and asserted that because Watkins recanted his trial testimony, his sentence is a miscarriage of justice.

The circuit court denied Morgan's requested relief in an order dated October 3, 2022. The court held as follows:

> During the hearing Eddie Watkins did not testify and there was no testimony regarding whether any pressure was exerted on any witness regarding his or her testimony. Several witnesses did testify that they knew Mr. Morgan, and that he was a hard worker, and was generally a good man. That was the extent of the testimony offered by Mr. Morgan.
>
> Relief is denied because Mr. Morgan failed to satisfy either prong of the *Strickland* test.

Morgan filed a timely notice of appeal on October 15, 2022; this appeal followed.

## II. *Standard of Review*

This court does not reverse a denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Reed v. State*, 2011 Ark. 115. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.*

The benchmark question to be resolved in judging a claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Norris v. State*, 2013 Ark. 205, 427 S.W.3d 626. We assess the effectiveness of counsel under a two-prong standard as set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Lowe v. State*, 2012 Ark. 185, 423 S.W.3d 6. Under the *Strickland* test, a claimant must show that counsel's performance was deficient, and the claimant must also show that the deficient performance prejudiced the defense to the extent that the appellant

5

was deprived of a fair trial. *Id.* A claimant must satisfy both prongs of the test, and it is unnecessary to examine both components of the inquiry if the petitioner fails to satisfy either requirement. *See Pennington v. State*, 2013 Ark. 39.

A petitioner claiming ineffective assistance must first show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the petitioner by the Sixth Amendment to the United States Constitution. *Walton v. State*, 2013 Ark. 254. There is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance, and an appellant has the burden of overcoming this presumption by identifying specific acts or omissions of trial counsel, which, when viewed from counsel's perspective at the time of the trial, could not have been the result of reasonable professional judgment. *Id.*

In order to meet the second prong of the test, a claimant must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Delamar v. State*, 2011 Ark. 87. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

### III. *Points on Appeal*

The issues presented in this appeal are (1) whether the circuit court erred by denying Morgan's claim of ineffective assistance of counsel and (2) whether the circuit court abused its discretion by declaring the proffered affidavits inadmissible.

### IV. *Discussion*

6

Morgan identifies many points for reversal; however, he develops and argues only the two points referenced above. Because we have repeatedly held that this court will not consider an argument if the appellant does not make a convincing argument or cite to authority to support it, we only address Morgan's developed arguments. *See Hayden v. Hayden*, 2020 Ark. App. 152, 594 S.W.3d 912.

## A. Ineffective Assistance of Counsel

First, Morgan argues that his counsel was ineffective because he failed to fully investigate the alleged offense of aggravated residential burglary. Specifically, appellant contends that his trial counsel failed to properly examine Watkins, and if he had followed a particular line of questioning and investigated Watkins prior to trial, Watkins would have given testimony that he invited Morgan into his home. Consequently, Morgan contends the result of his trial would have been different because there could be no offense of burglary if he entered Watkins's residence as an invited guest.

In denying Morgan's request for postconviction relief, the circuit court held that appellant had failed to satisfy either prong of the *Strickland* test. The court acknowledged that the only testimony set forth at the Rule 37.1 hearing was related to Morgan's character—namely that he is a good man and a hard worker. Further, the court reiterated its purpose to determine whether Morgan's trial counsel was ineffective; not to evaluate whether appellant is a good man or to reweigh the evidence. Furthermore, the court noted that even if a witness recanted or modified his or her testimony after the trial, Morgan failed to prove

7

resulting prejudice that stemmed from some action or inaction on behalf of his trial counsel. We agree.

Here, Morgan's claim is based on speculation that, had his trial counsel questioned Watkins days prior to trial rather than the morning of, Watkins would have testified that appellant was an invited guest in his home. Further, Morgan contends that his trial counsel's examination of Watkins was insufficient, and if he had "presented the witness properly" the outcome of the trial would have been different. Appellant failed, however, to set forth what supposed line of questioning would have caused Watkins to testify differently. Nor does he set forth how any action by his trial counsel would have changed the testimony of the other two witnesses who testified that Morgan entered the premises without permission.

A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477 (per curiam). Courts must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* The petitioner must also show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006). Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* Additionally, conclusory statements that counsel was ineffective cannot be the basis of postconviction relief. *Anderson v. State*, 2011 Ark. 488, at 5, 385 S.W.3d 783, 788.

8

We agree that Morgan failed to satisfy either prong of the *Strickland* test. The record reflects that counsel spoke with Watkins prior to trial; cross-examined the witness; brought to the jury's attention Watkins's incarceration status; and questioned Watkins regarding the night of the incident and whether Morgan was a guest at his home. Two additional witnesses testified that the appellant entered the residence without permission. Accordingly, Morgan did not set forth any facts to demonstrate that, had counsel performed further investigation or engaged in additional questioning of Watkins, he could have elicited testimony or evidence that would have changed the outcome of the trial. Morgan's conclusory statements cannot form the basis of postconviction relief. Accordingly, we find no error in the circuit court's denial of postconviction relief.

## B. Admissibility of Affidavits

Next, Morgan argues that the circuit court erred by refusing to admit into evidence three affidavits signed by Watkins. In these affidavits, Watkins attested that he was "confused" at trial, he was on medication during his testimony, and Morgan was an invited guest who entered his residence with permission. Because Watkins did not attend the Rule 37.1 hearing, the court sustained the State's objection to the admissibility of the affidavits based on hearsay. Instead, the court allowed Morgan to proffer the affidavits as exhibits.

This point involves an evidentiary ruling of the circuit court. Our standard of review for evidentiary rulings is that a circuit court has broad discretion, and we will not reverse absent an abuse of discretion. *Hopkins v. State*, 2017 Ark. App. 273, 522 S.W.3d 142. Abuse of discretion is a high threshold that does not simply require error in the circuit court's

9

decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Owens v. State*, 2017 Ark. App. 109, 515 S.W.3d 625. In addition, we will not reverse absent a showing of prejudice, as prejudice is not presumed. *Edison v. State*, 2015 Ark. 376, 472 S.W.3d 474.

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c). Morgan sought to admit into evidence the affidavits of Watkins—who chose not to attend the hearing—to prove that Watkins had falsely testified at trial. Thus, Morgan wanted to admit into evidence an out-of-court statement to prove that he entered Watkins's residence with permission. That is the definition of hearsay; thus, the circuit court did not abuse its discretion by declaring the affidavits inadmissible.

Furthermore, Morgan cannot establish that he was prejudiced by the court's ruling. The affidavits do not set forth any allegations of action or inaction on the part of Morgan's trial counsel that caused Watkins to testify as he did at trial. Because the affidavits do not support Morgan's claim of ineffective assistance of counsel, it cannot be said that he was prejudiced by the court's refusal to admit them into evidence.

V. *Conclusion*

The circuit court's denial of postconviction relief was not clearly erroneous; thus, we affirm.

Affirmed.

HARRISON, C.J., and WOOD, J., agree.

*Debert Morgan*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.